UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALPHA MANAGEMENT INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 4642 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| LAST ATLANTIS CAPITAL MANAGEMENT, LLC, LAST ATLANTIS PARTNERS, LLC, IRWIN BERGER, MARTIN ALLAMIAN, MICHAEL ELIZONDO, STIG OSTGAARD, and ROBERT DEMERITT, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alpha Management Incorporated filed this suit against Defendants Last Atlantis Capital Management, LLC ("LACM"), Martin Allamian, Irwin Berger, Robert DeMeritt, Michael Elizondo, and Stig Ostgaard, alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*j*(b), § 12(a) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a), and Illinois law. Doc. 1. All of those defendants except Allamian moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 8. Rather than respond to the motion, Alpha filed an amended complaint that added Last Atlantis Partners, LLC ("LAP") as a defendant. Doc. 13. All defendants except Allamian have moved to dismiss the amended complaint. Doc. 19; Doc. 30 at 2 n.1. The motion is granted as to both federal claims, although Alpha will be given leave to replead the § 10(b) claim. Because it presently is unclear whether subject matter jurisdiction lies over the state law claims, the court will reserve judgment as to whether those claims can survive dismissal.

**Background**

In considering a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). The court must construe those facts in the light most favorable to the party opposing dismissal. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In addition to the complaint itself, the court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). For claims not sounding in fraud, the court also must consider facts set forth in the plaintiff's opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The court may not consider those additional facts when evaluating a motion to dismiss claims that do sound in fraud. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003); *Wine & Canvas Dev., LLC v. Weisser*, __ F. Supp. 2d __, 2012 WL 3260234, at *10 (S.D. Ind. Aug. 7, 2012); *Zandstra v. Fischer*, 2012 WL 2421242, at *2 (N.D. Ind. June 26, 2012). The following sets forth the facts as favorably to Alpha as permitted by the amended complaint and the other materials that may be considered on a Rule 12(b)(6) motion.

LACM is a commodity trading advisor and commodity pool operator that offers investors onshore and offshore products and that manages futures accounts, such as LAP. Doc. 13 at ¶ 4. Allamian, Berger, DeMeritt, Elizondo, and Ostgaard are employed by or otherwise affiliated with LACM. *Id*. at ¶¶ 5, 7-9, 11. In 2006, Elizondo spoke to Alpha about investing with LACM, which resulted in Alpha buying $450,000 of Last Atlantis Partners, LLC-LACM Short Term

Discretionary Futures Share Class N ("Share Class N"). *Id*. at ¶ 18. Elizondo then began promoting to Alpha—on telephone calls, in emails, and at meetings in Freeport, Bahamas—an investment in what the parties call Share Class I-2. *Id*. at ¶¶ 19, 21-22. The amended complaint describes the content of Elizondo's communications as follows:

> Throughout these oral and written communications, Elizondo made the following admissions to Plaintiff: that investment in Share Class I-2 could be advanced for under $1,000,000 but was subject to both a one percent monthly management fee and a 50 percent performance fee; that Share Class I-2 is a futures system that used thousands of individual trading systems—which Elizondo claimed were consistently profitable—and applied those individual trading systems to many different futures markets throughout the world; that Share Class I-2 is a very advanced, high performance "money machine" that justified the high fees; that Elizondo controls hundreds of millions of US dollars in investments; and that Elizondo lives in a huge mansion in a suburb of Chicago where a bathroom is bigger than the apartment he was then renting in Freeport, Bahamas.

*Id*. at ¶ 23. Allamian, working on LACM's behalf, also promoted Share Class I-2 to Alpha. *Id*. at ¶ 24.

On May 1, 2008, "[b]ased on the repeated advice and representations of LACM," Alpha transferred its entire interest in Share Class N to Share Class I-2. *Id*. at ¶ 25. An account recap signed by Berger valued Alpha's Share Class I-2 investment at $307,564.75 as of October 31, 2008. *Id*. at ¶ 26. After receiving performance information from Ostgaard on October 9, 2009, Alpha was led to believe that Share Class I-2 stopped trading, though LACM continued to charge Alpha a one percent monthly management fee. *Id*. at ¶ 27. On December 21, 2009, Alpha filed a redemption request with LACM for the full amount of its Share Class I-2 investment. *Id*. at ¶ 28. On December 24, 2009, when Alpha followed up on its request, Berger said that "[o]ur accounting department is off for the holidays the remainder of the year. We will reply to you

about your redemption request after the start of the New Year." *Id*. at ¶ 29. When Alpha followed up again after the New Year, Elizondo replied via email on January 14, 2010, that "[r]edemption is being processed." *Id*. at ¶ 30.

Alpha continued to inquire about the status of the redemption through a series of telephone calls, emails, and faxes, but LACM ignored those communications. *Id*. at ¶ 34. On some unspecified date in 2011, Alpha reached Allamian on his personal cell phone. *Id*. at ¶ 35. Allamian informed Alpha that he had left LACM because he was "disturbed by the fact that LACM was not returning money to customers with securities that were not being traded." *Ibid*. In April 2011, a financial investigation firm retained by Alpha was able to contact DeMeritt and obtained a $90,000 payment to Alpha. *Id*. at ¶ 37. Alpha then tried without success to obtain the balance of its funds by working through Allamian. *Id*. at ¶ 38.

## Discussion

### I. Counts I and II: Federal Claims

#### A. Count I: Section 12(a) of the 1933 Act

Count I of the amended complaint alleges that Defendants violated § 12(a)(1) of the 1933 Act by selling unregistered securities to Alpha. Doc. 13 at ¶¶ 41-53. Section 12(a)(1) prohibits the offer or sale of a security "in violation of section 77e of this title." 15 U.S.C. § 77*l*(a)(1). Section 77e prohibits the sale or delivery of unregistered securities, meaning securities for which a registration statement has not been filed the Securities Exchange Commission ("SEC"). *Id*. § 77e(a). Section 77d, however, carves an exception to § 77e, stating that the "provisions of section 77e of this title shall not apply to … transactions by an issuer not involving any public offering." *Id*. § 77d(a)(2).

Alpha alleges that investments in Share Class I-2 were securities that were not registered with the SEC. Doc. 13 at ¶¶ 43, 45. While admitting that the Share Class I-2 investments were unregistered securities, Defendants contend they were exempt from the prohibition on selling unregistered securities, and thus from liability under § 12(a)(1), because the sale of those investments did not involve a public offering. Doc. 20 at 13-14. To support their submission that no public offering was involved, Defendants cite the Subscription Agreement and Private Placement Memorandum for the Share Class I-2 investments, both of which are attached to their motion to dismiss. Docs. 20-1, 20-2. The first amended complaint does not refer to those documents, so it is unclear whether Defendants may rely upon them in seeking a Rule 12(b)(6) dismissal. But Alpha does not object to Defendants' use of the documents, and in fact does not contest Defendants' submission that the sale of Share Class I-2 investments involved no public offering. Doc. 26 at 11-12. Nor does Alpha dispute Defendants' contention that the absence of a public offering defeats any § 12(a)(1) claim. Alpha has therefore forfeited its § 12(a)(1) claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Defendants' argument would have prevailed even if Alpha had put up a fight, as Defendants unquestionably are correct on the law. *See Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th Cir. 2005) (rejecting a § 12(a)(1) claim where the plaintiff did not "allege[] any facts demonstrating the sale was actually a public offering"); *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (affirming the dismissal of a § 12(a)(1) claim, reasoning that "Section 12 of the 1933 Act does not apply to private transactions"); *Feinberg v. Leighton*, 1987 WL 6147, at *15 (S.D.N.Y. Jan. 30, 1987) (dismissing a 12(a)(1) claim because there "was not a public

offering"); J. William Hicks, *Civil Liabilities: Enforcement and Litigation Under the 1933 Act* § 5:50 (2002) ("[A] plaintiff seeking relief under Section 12(a)(1) must establish … that the filing occurred within three years after the security was first bona fide offered to the public.").

Alpha attempts to save Count I from dismissal by re-framing it under § 12(a)(2) of the 1933 Act. Section 12(a)(2) prohibits the offer or sale of a security by means of a prospectus or oral statement that includes an untrue statement of material fact or that omits a material fact necessary to make the statements not misleading. 15 U.S.C. § 77*l*(a)(2); *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 583 (1995). Like § 12(a)(1), however, § 12(a)(2) applies only to securities offered or sold through a public offering. *See Yung v. Lee*, 432 F.3d 142, 147-49 (2d Cir. 2005); *Lewis*, 252 F.3d at 357; *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 n.2 (7th Cir. 1995) (holding that § 12(a)(2) is "inapplicable" where a case "does not concern a public offering"); *Premier Capital Mgmt., LLC v. Cohen*, 2003 WL 21960357, at *10 (N.D. Ill. Aug. 15, 2003) ("Section 12(a)(2) applies only to public offerings, not private placements. … Accordingly, causes of action brought under § 12(a)(2), where the transaction at issue was a private placement rather than a public offering, are subject to dismissal."); *Abbell Credit Corp. v. Banc of Am. Secs., LLC*, 2001 WL 1104601, at *3 (N.D. Ill. Sept. 17, 2001) (same). As just noted, the sale of Share Class I-2 investments to Alpha did not involve a public offering, which means that Alpha has no § 12(a)(2) claim.

For these reasons, Count I is dismissed. The dismissal is with prejudice because the defect in the § 12(a) claim—that the sale of Share Class I-2 investments did not involve a public offering—cannot be cured by repleading.

### B. Count II: Section 10(b) of the 1934 Act

Count II of the amended complaint alleges that Defendants violated § 10(b) of the 1934 Act by making false and misleading statements to Alpha in connection with Alpha's investment in Share Class I-2. Doc. 13 at ¶¶ 54-65. To state a § 10(b) claim, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007) (internal quotation marks omitted); *see also Schleicher v. Wendt*, 618 F.3d 679, 681-82 (7th Cir. 2010) ("The canonical elements of a claim under § 10(b) of the Securities Exchange Act of 1934, are falsehood in connection with the purchase or sale of securities, scienter, materiality, reliance, causation, and loss.") (internal citations omitted). A § 10(b) claim must satisfy the heightened pleading standards of Rule 9(b). *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P 9(b). In particular, a complaint alleging fraud must provide "the who, what, when, where, and how" of the circumstances constituting fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), imposes additional pleading requirements on private securities fraud suits, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *AnchorBank*, 649 F.3d at 614, including suits like Alpha's that are not class actions, *see Greer v. Advanced Equities, Inc.*, 2009 WL 1748410, at *9 (N.D. Ill. June 19, 2009) ("the heightened pleading standard applies to the plaintiffs' claims, even though the case is not

styled as a class action"); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 835 n.8 (N.D. Ill. 2008) (same). But there is no need to address the PSLRA here because the § 10(b) claim fails to satisfy Rule 9(b).

The amended complaint alleges that "Defendants made a series of false and misleading misrepresentations and omissions of material fact to Plaintiff," which Alpha says are recited "in paragraphs 16 to 30" of that pleading. Doc. 13 at ¶ 55. Paragraphs 16-30 do identify certain statements that Defendants made to Alpha regarding the Share Class I-2 investment. The bulk of statements are set forth in ¶ 23, which alleges that Elizondo made several "admissions" (Alpha's term) to Alpha, including that Elizondo's Chicago area home has an unusually large bathroom, that Elizondo controlled hundreds of millions of dollars of investments, and that Share Class I-2 is a futures system that used thousands of individual trading systems that were consistently profitable. *Id*. at ¶ 23. But the amended complaint never actually comes out and says that any *particular* statement, whether set forth in ¶ 23 or elsewhere in ¶¶ 16-30, was false or misleading. Without such an allegation, Alpha cannot go forward with its § 10(b) claim. *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (affirming the dismissal of a § 10(b) claim, reasoning that "nothing in the complaint explains with adequate specificity how [the defendants'] statements were actually false or misleading"); *Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001) ("[w]hat sinks plaintiffs' position is their inability to identify any false statement"); *Akerman v. Bankworcester Corp.*, 751 F. Supp. 11, 13 (D. Mass. 1990) (dismissing a § 10(b) claim because the plaintiffs "have not pointed to a single specific misrepresentation"); *Grupo Internacional Cantabria Co., S.A. v. ABN AMRO Inc.*, 2008 WL 161480, at *5 (N.D. Ill. Jan. 11,

2008) (holding that the complaint fails Rule 9(b) because it "at no point identif[ies] which statements made by defendants were fraudulent").

Count II is dismissed without prejudice, and Alpha will be given an opportunity to replead. If Alpha alleges that any particular statement by Defendants was false or misleading, and if Defendants again move to dismiss, the court will evaluate whether each such statement was material, whether it was made in connection with the sale or purchase of the Share Class I-2 investments, and whether Alpha has adequately pleaded scienter, reliance, and loss causation in connection with each statement.

## II.     Counts III-VI: State Law Claims

Counts III-VI of the amended complaint purport to state claims under Illinois law for breach of contract, common law fraud, breach of fiduciary duty, and violations of the Illinois Securities Law of 1933. Doc. 13 at ¶¶ 66-82. Alpha alleges that subject matter jurisdiction lies over these claims under both the diversity statute, 28 U.S.C. § 1332, and the supplemental jurisdiction statute, 28 U.S.C. § 1367. Doc. 13 at ¶¶ 15-16. Given the posture of the case, the court is not in a position to determine whether it has jurisdiction over those claims.

Diversity jurisdiction is proper only where when there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *see also Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 758 (7th Cir. 2009). The amended complaint does not properly plead diversity jurisdiction. As an initial matter, the amended complaint alleges the residence, not the citizenship, of the five individual defendants. Doc. 13 at ¶¶ 5, 7-9, 11. It is axiomatic that diversity jurisdiction turns on an individual's citizenship, not his residence. *See Heinen v. Northrup Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012);

*Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003). Moreover, the amended complaint alleges that LAP "is a Delaware series limited liability company with its principal place of business in St. Charles, Illinois," and that LACM is "organized as a limited liability company in the Virgin Islands, with offices in St. Charles, Illinois." Doc. 13 at ¶¶ 3-4. The citizenship of an LLC, however, turns on the citizenship of its members, not on its principal place of business or the jurisdiction under whose laws it is organized. *See Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) (where a party "is a limited liability corporation, … we must look to the citizenship of each of its members to determine its citizenship for diversity purposes"); *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (same); *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003) ("limited liability companies are citizens of every state of which any member is a citizen"). "If even one investor in an LP or LLC has the same citizenship as any party on the other side of the litigation, complete diversity is missing and the suit must be dismissed." *White Pearl Inversiones S.A. v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011). Because the amended complaint does not properly plead the citizenship of LACM, LAP, or the individual defendants, it is unclear whether the court has diversity jurisdiction over the state law claims. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) ("In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper."); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) ("the party seeking to invoke federal diversity jurisdiction … bears the burden of demonstrating that the complete diversity and amount in controversy requirements are met").

If Alpha (1) does not or is unable to plead diversity jurisdiction, *and* (2) does not attempt to replead its § 10(b) claim or attempts to do so without success, then the court would exercise its discretion to relinquish supplemental jurisdiction over the state law claims. Section 1367(c)(3) of Title 28 provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of these exceptions apply here. Illinois law gives Plaintiff one year to refile its state law claims in state court. *See* 735 ILCS 5/13-217; *Davis v. Cook Cnty.,* 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claims. And it is not clearly apparent how the state law claims should be decided. It follows that relinquishing jurisdiction over the state law claims would be the appropriate course under § 1367(c)(3) if it turns out that diversity jurisdiction does not lie over those claims. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251-53 (7th Cir. 1994).

**Conclusion**

For the foregoing reasons, the § 12(a) claim is dismissed with prejudice and the § 10(b) claim is dismissed without prejudice. Alpha has until November 21, 2012, to file a second amended complaint that seeks to replead the § 10(b) claim; if it wishes, it also may replead the

state law claims.  No further amendments will be permitted.  Defendants shall have until December 12, 2012, to answer or otherwise plead to the second amended complaint.  If Alpha does not replead the § 10(b) claim but wishes to pursue its state law claims in federal court, it must properly plead diversity jurisdiction.  Even if Alpha does try to replead the § 10(b) claim, it still should plead diversity jurisdiction in the event that claim is again dismissed.

November 2, 2012

_____
United States District Judge